

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35171-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW THOMAS SCHWARTZ, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — In several contexts, statutory language that detention or confinement is "pursuant to a felony conviction" has been held by our courts to include detention or confinement for a probation or community custody violation. In calculating Matthew Schwartz's offender score in 2017 for his failure to register as a sex offender, the trial court was persuaded that his 1997 and 2001 convictions for class C felonies never washed out because recent incarcerations for willfully failing to pay legal financial obligations (LFOs) were "pursuant to" his then 16-year-old 2001 conviction.

The obligation to make payments toward an LFO constitutes a condition or requirement of a sentence. In the event of willful noncompliance, the offender is subject to modification of his or her judgment and sentence to impose further punishment. *E.g.*, RCW 9.94A.760(11), .6333; RCW 9.94B.040. Yet unlike nonfinancial conditions of a criminal judgment and sentence, a condition requiring payment toward LFOs is not directly related to public safety, and it creates an obligation that can continue well beyond the statutory maximum term for the crime: for 20 years in the case of an offense committed before July 1, 2000, and indefinitely for an offense committed on or after that date. RCW 9.94A.760(4).

Given these differences and the purpose of the wash-out provisions of the Sentencing Reform Act of 1981, chapter 9.94A RCW, we hold that the language "the last date of release from confinement . . . pursuant to a felony conviction" in RCW 9.94A.525(2)(c) does not include confinement imposed for a failure to make a payment toward LFOs. In so holding, we disagree with *State v. Mehrabian*, 175 Wn. App. 678, 308 P.3d 660 (2013). We remand for resentencing.

FACTS AND PROCEDURAL BACKGROUND

In February 2017, the State charged Matthew Schwartz with one count of failing to register as a sex offender. He pleaded guilty as charged. At sentencing, the court was presented with the following criminal history for Mr. Schwartz:

| Crime | Violation Date | Sentence Date | Crime Type |
|---|---|---|---|
| Assault 2 (w Sexual Motivation) | 9/01/93 | 7/10/93 | FA |
| Forgery | 7/02/97 | 7/22/1997 | FC |
| Failure to Register as Sex Offender | 5/04/01 | 9/04/01 | FC |
| Possession of Methamphetamine | 3/13/13 | 11/03/14 | FC |

*See* Clerk's Papers (CP) at 28.

It was uncontested that the 1993 assault 2 conviction resulted in three points toward Mr. Schwartz's offender score. Defense counsel argued that the 1997 and 2001 class C felony convictions had washed out, resulting in an offender score of 4. But the State presented evidence that in the prior several years, Mr. Schwartz had been sentenced to jail time by orders imposing sanctions for his failure to pay LFOs imposed in connection with his 2001 sentence and argued that those orders prevented both the 1997 and 2001 crimes from washing out.[1]

With an offender score of 4, Mr. Schwartz's standard range was 12 to 14 months. With an offender score of 6, his standard range was 17 to 22 months. Finding Mr. Schwartz's offender score to be 6, the court imposed a low-end sentence of 17 months.

Mr. Schwartz appeals.

---

[1] Mr. Schwartz's judgment and sentence for the 2001 conviction had been modified pursuant to RCW 9.94A.6333 to impose five days' confinement with credit for time served in October 2014, three days with credit for time served in January 2015, and most recently another three days with credit for time served, to be suspended if he paid $50.

ANALYSIS

RCW 9.94A.525, which provides the rules for calculating a defendant's offender score, includes rules under which class B felonies, class C felonies, and serious traffic infractions "wash out"—i.e., will not be counted—if the defendant has spent sufficient crime-free time in the community. The three rules, which appear at RCW 9.94A.525(2)(b)-(d), are couched in parallel language. RCW 9.94A.525(2)(c) is the provision at issue in this case. Subject to exceptions not relevant here, RCW 9.94A.525(2)(c) provides that class C prior felony convictions shall not be included in the offender score if,

> since the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction.

In *State v. Ervin*, our Supreme Court endorsed a construction of the statute that "[breaks] it down into two clauses: a ""'trigger[ ]'"" clause, which identifies the beginning of the five-year period, and a ""'continuity/interruption'"" clause, which sets forth the substantive requirements an offender must satisfy during the five-year period." 169 Wn.2d 815, 821, 239 P.3d 354 (2010) (second alteration in original) (quoting *In re Pers. Restraint of Nichols*, 120 Wn. App. 425, 432, 85 P.3d 955 (2004)).

*We reject Mr. Schwartz's argument that the trigger clause ambiguously provides optional trigger dates*

Mr. Schwartz contends on appeal that the trigger clause ambiguously creates alternative trigger dates, the first being "the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction" and the second being "entry of judgment and sentence." Appellant's Opening Br. at 4-5 (quoting RCW 9.94A.525(2)(c)). He argues that the doctrine of lenity allows him to apply the more favorable "entry of judgment and sentence" trigger date, under which his 2001 conviction washed out based on six and a half years he spent crime-free in the community: from 2006, when he was released from custody, until his controlled substance violation in 2013.

Statutory interpretation is a question of law reviewed de novo. *In re Det. of Williams*, 147 Wn.2d 476, 486, 55 P.3d 597 (2002). "The court's paramount duty in statutory interpretation is to give effect to the legislature's intent." *Nichols*, 120 Wn. App. at 431. The surest indication of legislative intent is the language enacted by the legislature, so if the meaning of a statute is plain on its face, we "'give effect to that plain meaning.'" *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)). "The legislature is presumed not to include unnecessary language when it enacts legislation." *McGinnis v. State*, 152 Wn.2d 639, 645, 99 P.3d 1240 (2004).

A statute is ambiguous only if susceptible to two or more reasonable interpretations; it is not ambiguous merely because different interpretations are

5

conceivable. *Burton v. Lehman*, 153 Wn.2d 416, 423, 103 P.3d 1230 (2005). Although the rule of lenity applies to sentencing statutes, it applies only *after* employing tools of statutory construction. *Ervin*, 169 Wn.2d at 823 n.1.

We do not agree that the trigger clause is ambiguous. When a statute speaks of "A, if any, or B" the words "if any" can reasonably communicate that "A" is to apply if it exists, and only if it does not exist will "B" apply. That is reasonably communicated by the trigger clause. In most cases, there will be a "last date of release from confinement . . . pursuant to a felony conviction," and that will be the trigger. Less often, there will be no period of confinement, either because the seriousness level and offender score are both low,[2] a sentencing alternative is ordered,[3] or the court imposes an exceptional sentence. In those cases, entry of the judgment and sentence will be the trigger. The clause cannot reasonably be read to create truly alternate dates, as argued by Mr. Schwartz, because the judgment and sentence date would always be more favorable and the "last day of release from confinement" would never apply.

That does not end our construction of the statutory language, however, because we find it irreconcilable with the purpose of the wash-out provisions to reset the clock for

---

[2] *See* RCW 9.94A.510, under which the low end of the standard range sentence for crimes with a seriousness level of I or II can be 0 with a sufficiently low offender score.

[3] *E.g.*, RCW 9.94A.650 (first time offender); RCW 9.94A.655 (custodial parent).

confinement imposed based solely on an offender's failure to pay LFOs.[4]  And any

resetting of the clock for the failure to pay the LFOs imposed in the 2001 judgment and

sentence does not affect the wash out of the 1997 forgery conviction.

*The 1997 forgery conviction washed out*

The trial court erred in adopting the State's position that the 1997 forgery

conviction had not washed out.  Although neither party provided any "release from

confinement" dates, we can safely assume that Mr. Schwartz had been released from

confinement for the forgery conviction before May 4, 2001, when he committed the

crime of failure to register as a sex offender.  Being a class C felony, the forgery

conviction was subject to a five-year wash-out period.  If we assume that Mr. Schwarz

served the maximum five years for his 2001 failure to register conviction, he would have

been released from confinement on or before September 4, 2006.  He did not commit

another crime until his controlled substance crime in March 2013, meaning that he was

crime-free in the community for six and a half years, from September 2006 to March

2013.

The wash-out period need not immediately follow the prior conviction.  Any five-

year period will do, so long as it follows the date of entry of judgment and the last date of

---

[4] This issue was identified during the panel's consideration of the case.  The parties were invited to present written argument on the issue in accordance with RAP 12.1(b).

release from confinement for the prior offense. *State v. Hall*, 45 Wn. App. 766, 768, 728 P.2d 616 (1986). Both are true of the 1997 forgery conviction. That conviction clearly washed out.

*Whether the 2001 failure to register conviction washed out
turns on our construction of RCW 9.94A.525's "confinement
. . . pursuant to a felony conviction" language*

In *State v. Perencevic*, 54 Wn. App. 585, 774 P.2d 558, *review denied*, 113 Wn.2d 1017 (1989), this court interpreted the language "being detained pursuant to a conviction of a felony" in the first degree escape statute, RCW 9A.76.110, as including confinement for violating a term of community supervision imposed for a felony conviction. Perencevic had completed serving his period of confinement for two prior felonies but had violated conditions of community service. His escape attempt took place while in custody for the community service violations. This court reasoned that the bench warrants resulting in the detention from which he attempted to escape "were issued due to his failure to complete certain requirements of community supervision which are as much a part of the punishment and sentence as detention time." *Perencevic*, 54 Wn. App. at 589.

In *State v. Blair*, 57 Wn. App. 512, 789 P.2d 104 (1990), this court extended the reasoning of *Perencevic* to the wash-out context, interpreting "release from confinement . . . pursuant to a felony conviction," as used in former RCW 9.94A.360(2) (1989) as encompassing release from confinement imposed after Blair violated probation terms of

8

his felony sentence. This court found the construction to be supported by the plain language of the provision and in harmony with the purpose provision of the Sentencing Reform Act by "giving the offender an opportunity to improve himself." *Blair*, 57 Wn. App. at 516 (citing RCW 9.94A.010(5)).

The obligation to make payments toward a legal financial obligation constitutes a condition or requirement of a sentence and in the event of willful noncompliance, the offender is subject to modification of his or her judgment and sentence to impose further punishment. *E.g.*, RCW 9.94A.760(11), .6333. But it is unlike other conditions of a sentence in two important respects.

First, nonfinancial conditions of community custody cannot extend beyond the statutory maximum for the crime. *E.g.*, *State v. Hernandez*, 185 Wn. App. 680, 689, 342 P.3d 820 (2015) (DUI[5] offender could not be ordered to use an ignition interlock device for more than the 60 month statutory maximum for the crime); *State v. Armendariz*, 160 Wn.2d 106, 120, 156 P.3d 201 (2007) (no-contact order imposed under RCW 9.94A.505(8) is limited to the statutory maximum). A condition requiring payment toward a legal financial obligation creates an obligation that can continue for 20 years in the case of an offense committed before July 1, 2000, and indefinitely for an offense committed on or after that date. RCW 9.94A.760(4) provides:

---

[5] Driving under the influence of intoxicants.

9

> For an offense committed on or after July 1, 2000, the court shall retain jurisdiction over the offender, for purposes of the offender's compliance with payment of the legal financial obligations, until the obligation is completely satisfied, regardless of the statutory maximum for the crime.

Thus, while the statutory maximum for Mr. Schwartz's 2001 failure to register conviction was five years, any violation of his duty to pay LFOs imposed by that sentence, at any time, could re-start the clock on the wash-out provision.

This stinginess when it comes to washing out crimes for offenders who fail to pay LFOs makes no sense in light of the second difference between financial and nonfinancial conditions of community custody: financial conditions have no relation to the important sentencing purposes of protecting the public, offering the offender an opportunity to improve himself or herself, or reducing the risk of reoffending. *See* RCW 9.94A.010(4), (5), and (7). We recognize that a court must find a willful failure to pay LFOs before modifying a sentence to impose an additional period of confinement. But even so, we cannot conceive of a legislative purpose for the wash-out provisions under which it is logical to deny wash out to an offender who has lived crime-free in the community for the required period but failed to make a payment toward an LFO.

The State correctly cites *Mehrabian*, a 2013 decision of another division of this court, as holding that confinement for a failure to pay LFOs resets the wash-out clock. The *Mehrabian* court based its conclusion on *Perencevic* and *Blair*, without (it appears) being presented with any argument that substantial differences between financial and

nonfinancial conditions warrant a more critical consideration of legislative intent. We hold that as used in RCW 9.94A.525(2)(b)-(d), the language "the last date of release from confinement . . . pursuant to a felony conviction" does not include confinement that is imposed for failing to make a payment toward an LFO. Given that construction of the provision, Mr. Schwartz's 2001 failure to register conviction washed out based on his six and a half crime free years in the community following September 2006.

We reverse and remand for resentencing.

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, A.C.J.

11