FILED
9/29/2025
Court of Appeals
Division I
State of Washington

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

STATE OF WASHINGTON,

Respondent,

v.

JESSE L. HARTMAN,

Appellant.

No. 86652-4-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, J. — Jesse Hartman appeals the sentence imposed on his convictions for murder in the second degree and unlawful possession of a firearm in the first degree. Hartman asserts that the trial court miscalculated his offender score by including a washed-out felony conviction and by including a juvenile felony conviction. We affirm.

I

Hartman pleaded guilty to murder in the second degree and unlawful possession of a firearm in the first degree for an offense he committed on March 21, 2021. As part of the plea agreement, Hartman and the State both agreed to recommend a midrange sentence after the trial court calculated Hartman's offender score. The parties did not, however, agree on what Hartman's offender score was.

Hartman's criminal history consists of a 2004 conviction for drive-by shooting, a 2001 conviction for attempted robbery in the second degree, and a 1998 juvenile

conviction for robbery in the second degree. The State argued that Hartman's offender score should be 7 on the murder conviction, with each prior felony counting as 2 (as violent offenses), plus 1 point for the concurrent conviction. The State further argued that Hartman's offender score for the unlawful possession of a firearm conviction should be 4, consisting of 1 point for each prior and current offense. Hartman argued that his 2001 attempted robbery conviction washed out and that his offender scores should be 5 and 3, respectively. To counter this argument, the State produced certified copies of records from the Department of Corrections (DOC) and Snohomish County Sheriff's Office reflecting that Hartman had served a short jail sentence in 2009 for violating the terms of his community custody.

The trial court agreed with the State and calculated Hartman's offender scores as 7 for the murder conviction and 4 for the unlawful possession of a firearm conviction. The trial court imposed the midrange sentence of 266 months of incarceration, followed by 36 months of community custody.

Hartman appeals.

II

A

Hartman first asserts that the trial court erred by calculating his offender score to include the 2001 attempted robbery conviction. Hartman asserts that the State did not produce reliable evidence of the basis for his 2009 jail sentence such that the trial court could conclude that the conviction did not wash out. In the alternate, Hartman argues that his community custody violations were minor and did not prevent his 2001 conviction from washing out. We disagree.

2

We review the trial court's calculation of an offender score de novo. State v. Schwartz, 194 Wn.2d 432, 438, 450 P.3d 141 (2019). Calculation of an offender score is based on the defendant's prior convictions. RCW 9.94A.525. The State bears the burden of proving prior convictions at sentencing by a preponderance of the evidence. State v. Hunley, 175 Wn.2d 901, 909-10, 287 P.3d 584 (2012). Prior convictions that are not included in the offender score are said to have "washed out." Schwartz, 194 Wn.2d at 439. RCW 9.94A.525(2)(c) states, in relevant part:

> class C prior felony convictions other than sex offenses shall not be included in the offender score if, since the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction.

Because conditions of community custody are part of the felony sentence, confinement imposed for violating community custody conditions constitutes "confinement pursuant to a felony conviction" and prevents the class C felony from washing out. In re Pers. Restraint of Higgins, 120 Wn. App. 159, 164, 83 P.3d 1054 (2004). An exception to this rule exists where the sole violation of community custody conditions is the failure to pay legal financial obligations (LFOs). Schwartz, 194 Wn.2d at 445.

Hartman's 2001 attempted robbery conviction is a class C felony conviction. RCW 9A.56.210; 9A.28.020(3)(c). Hartman asserts that the State did not meet its burden to prove that he was in "confinement pursuant to a felony conviction" in 2009, preventing his attempted robbery conviction from washing out. Hartman claims that the evidence presented by the State was not sufficiently reliable for the trial court to find that he violated the terms of his community custody on a felony conviction.

3

The State must prove the defendant's criminal history by a preponderance of the evidence, not beyond a reasonable doubt. State v. Ford, 137 Wn.2d 472, 480, 973 P.2d 452 (1999). At sentencing, the rules of evidence do not apply. State v. Strauss, 119 Wn.2d 401, 418, 832 P.2d 78 (1992). The State need not present original or certified copies of documents to prove the defendant's criminal history. In re Pers. Restraint of Adolph, 170 Wn.2d 556, 568, 243 P.3d 540 (2010). Rather, the State need only establish the defendant's criminal history using evidence with "minimum indicia of reliability." Ford, 137 Wn.2d at 481.

Here, to prove that Hartman's 2001 attempted robbery conviction had not washed out, the State presented certified copies of Hartman's file with DOC documenting his community custody violations, a letter from DOC enclosing the certified documents, and a certified copy of the 2009 booking summary from the Snohomish County Sheriff's Office documenting Hartman's arrest on a 45-day sanction for parole violations. The State was not required to further authenticate these documents, nor was the State required to prove that the documents constituted business records under the rules of evidence. Strauss, 119 Wn.2d at 418. Although Hartman contends that the records could have been falsified, he presents nothing beyond speculation to support this argument. Considering the proffered documents together, the State provided reliable evidence that Hartman was confined pursuant to a felony conviction in 2009, preventing his conviction from washing out. The trial court did not err by including Hartman's attempted robbery conviction in his offender score.

In the alternative, Hartman asserts that a "minor" community custody violation cannot prevent an offense from washing out. In support of this assertion, Hartman

relies on Schwartz's holding that nonpayment of LFOs cannot prevent a felony from washing out. Schwartz is not as broad as Hartman would have us read it. This court has held multiple times that incarceration due to violation of probation imposed as part of a felony sentence was "confinement pursuant to a felony conviction" under RCW 9.94A.525(2)(c). Higgins, 120 Wn. App. at 164; State v. Blair, 57 Wn. App. 512, 516, 789 P.2d 104 (1990). As the Supreme Court explicitly stated, Schwartz only overruled these cases insofar as it pertained to failure to pay LFOs.[1] 194 Wn.2d at 438 n.3.

Unlike other conditions of community custody, the obligation to pay LFOs can continue for long after the defendant's sentence has been otherwise fully served. See RCW 9.94A.760(5). Due to this continuing obligation, the Supreme Court deemed it absurd to read RCW 9.94A.525(2)(c) as precluding wash out solely for the nonpayment of LFOs. 194 Wn.2d at 443. To read the statute in this matter would make it so that "many felony convictions would never wash out"[2] and defendants would receive different treatment based solely on their financial means. Schwartz, 194 Wn.2d at 443-44.

These concerns do not hold true for other violations of community custody. DOC's supervision to ensure compliance with conditions of community custody, other than LFOs, lasts only so long as the term of community custody imposed by the court. And complying with community custody conditions is easier than ever, now that the

---

[1] Nothing in this opinion should be read as expressing any view as to whether a prior conviction may wash out when a defendant has spent time in jail as a sanction for violating a condition of his or her sentence. We answer only the narrow question of whether confinement pursuant to a sanction for failing to pay LFOs precludes a prior felony conviction from washing out under the SRA. Schwartz, 194 Wn.2d at 438 n.3.

[2] The legislature did not enable courts to waive the obligation to pay previously-imposed LFOs until 2022, three years after Schwartz was decided. See LAWS OF 2022, ch. 260.

defendant has the ability to petition the court to modify the conditions of community custody if there has been a substantial change in circumstances. RCW 9.94A.703(5). We therefore decline to extend Schwartz any further.

B

Hartman next asserts that the determination of whether his attempted robbery conviction washed out should have been made by a jury, rather than the court, under Erlinger v. United States, 602 U.S. 821, 144 S. Ct. 1840, 219 L. Ed. 2d 451 (2024). The State counters that Hartman waived this argument by failing to raise it below and that, even if he did not, Erlinger does not apply. We agree with the State that Erlinger does not apply in this case.

In Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added.) Our Supreme Court subsequently held, "[t]o give effect to the prior conviction exception, Washington's sentencing courts must be allowed as a matter of law to determine not only the fact of a prior conviction but also those facts 'intimately related to [the] prior conviction' such as the defendant's community custody status." State v. Jones, 159 Wn.2d 231, 241, 149 P.3d 636 (2006) (quoting United States v. Moore, 401 F.3d 1220, 1225 (10th Cir. 2005)); see also State v. Thiefault, 160 Wn.2d 409, 418, 158 P.3d 580 (2007) (rejecting argument that a jury was required to engage in comparability analysis). Hartman asserts that Jones and similar cases are no longer good law in light of the United States Supreme Court's decision in Erlinger.

In Erlinger, the United States Supreme Court held that whether a defendant's prior convictions were "committed on occasions different from one another," such that his minimum sentence should be increased to 15 years under the Armed Career Criminal Act (ACCA),18 U.S.C. § 924(e)(1), was a determination to be made by a jury. 602 U.S. at 834. Following this holding, the court stated, "[w]hile recognizing Mr. Erlinger was entitled to have a jury resolve ACCA's occasions inquiry unanimously and beyond a reasonable doubt, we decide no more than that." Erlinger, 602 U.S. at 835. This caveat is the reason we held in State v. Anderson, 31 Wn. App. 2d 668, 681, 552 P.3d 803 (2024), that "Erlinger's holding is limited to resolving ACCA's occasions inquiry and does not overrule our state's well-established precedent in [State v.] Wheeler, 145 Wn.2d 116, 34 P.3d 799 [(2001)]." We reaffirmed this holding in State v. Frieday, 33 Wn. App. 2d 719, 747, 565 P.3d 139 (2025). Hartman presents no compelling reason for us to depart from those opinions and we decline to do so.

C

Finally, Hartman asserts that his juvenile conviction should not have been included in his offender score under RCW 9.94A.525(1)(b).[3] Hartman argues that the plain language of RCW 9.94A.525(1)(b) demonstrates the legislature's intent that the statute be exempted from presumptive rule that defendants be sentenced according to the law in place at the time the offense was committed. We disagree.

Effective July 23, 2023, RCW 9.94A.525(1)(b) states that juvenile adjudications "which are not murder in the first or second degree or class A felony sex offenses may

---

[3] The State contends that Hartman waived this issue by not raising it at his sentencing hearing. But pure legal issues in the calculation of an offender score cannot be waived. In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 874, 50 P.3d 618 (2002).

not be included in the offender score." Sentences imposed under the Sentencing Reform Act, ch. 9.94A RCW, are generally determined "in accordance with the law in effect at the time of the offense." State v. Jenks, 197 Wn.2d 708, 714, 487 P.3d 482 (2021) (citing RCW 9.94A.345). If a sentencing statute is amended or repealed, the amendment or repeal does not apply merely because proceedings are ongoing. RCW 10.01.040, otherwise known as the "saving clause," states in relevant part:

> Whenever any criminal or penal statute shall be amended or repealed, all offenses committed or penalties or forfeitures incurred while it was in force shall be punished or enforced as if it were in force, notwithstanding such amendment or repeal, unless a contrary intention is expressly declared in the amendatory or repealing act.

This "savings clause is deemed a part of every repealing statute as if expressly inserted therein, and hence renders unnecessary the incorporation of an individual savings clause in each statute which amends or repeals an existing penal statute." State v. Hanlen, 193 Wash. 494, 497, 76 P.2d 316 (1938). To avoid application of the saving clause, the legislature must clearly express its intent to exclude the statutory amendment from the ambit of RCW 10.01.040, although no specific words are required. State v. Ross, 152 Wn.2d 220, 238, 95 P.3d 1225 (2004).

Relying on State v. Grant, 89 Wn.2d 678, 575 P.2d 210 (1978), Hartman asserts that the words "may not" are an express declaration that the legislature intended for RCW 9.94A.525(1)(b) to apply to all proceedings, regardless of the time of the offense. Hartman misconstrues the Supreme Court's opinion. In Grant, the defendants were charged with creating a public nuisance, being intoxicated on a public highway, and obstruction of a law enforcement officer. 89 Wn.2d at 681. While proceedings were ongoing, former chapter 70.96A RCW went into effect, repealing former RCW 9.68.040,

the statute criminalizing intoxication on a public highway. Former RCW 70.96A.010 (1972) declared that "[i]t is the policy of this state that alcoholics and intoxicated persons may not be subjected to criminal prosecution solely because of their consumption of alcoholic beverages but rather should be afforded a continuum of treatment in order that they may lead normal lives as productive members of society." The Supreme Court held that this declaration of policy clearly expressed the legislature's intent to apply the repeal of RCW 9.68.040 to all criminal cases, regardless of the date of the offense. Grant, 89 Wn.2d at 684. This holding did not turn on the use of the words "may not" in former RCW 70.96A.010, but was based on the overarching policy articulated by the legislature in enacting chapter 70.96A RCW. Similarly, we will not narrow our focus solely to the words "may not," but examine the legislature's overarching policy in amending RCW 9.94A.525.

We have previously rejected the argument that the legislature intended RCW 9.94A.525(1)(b) to be exempt from the saving clause. In State v. Troutman, we held, "Because the plain language is unambiguous and does not evince a legislative intent for EHB 1324 to apply retroactively, we conclude that under the SRA, RCW 9.94A.345, and the saving clause, RCW 10.01.040, the law in effect at the time of the offense applies to [the defendant's] sentence." 30 Wn. App. 2d 592, 599-600, 546 P.3d 458 (2024). Hartman presents no compelling reason for us to depart from Troutman.[4]

---

[4] Hartman also urges us to deem RCW 9.94A.525(1)(b) applicable to his case because the statute is remedial. But "the remedial nature of an amendment is irrelevant when the statute is subject to RCW 10.01.040." State v. Tester, 30 Wn. App. 2d 650, 658-59, 546 P.3d 94, review denied, 3 Wn.3d 1019 (2024).

In the alternative, Hartman asserts that not applying RCW 9.94A.525(1)(b) in his case violates his right to equal protection.  As the State correctly notes, it has long been the law of this state "that a defendant's equal protection rights are not violated 'merely because the Legislature changed the standard sentencing range for a crime' or 'changed its view of criminal punishment which resulted in offenders being subject to different punishment schemes.' "  Ross, 152 Wn.2d at 240-41 (quoting In re Pers. Restraint of Stanphill, 134 Wn.2d 165, 175, 949 P.2d 365 (1998)).  Hartman's argument to the contrary lacks merit.

Affirmed.

_____Mann, J._____

WE CONCUR:

_____Chung, J._____          _____, ACJ